## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| A.H., a minor, by his parents, ANTWAUN HAWKINS and TAMESHA HAWKINS,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA and<br><br>CLIFFORD B, JANEY<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-1247 (JR)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

The Defendants, by counsel, here reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss filed January 4, 2006 ("Opposition").

### INTRODUCTION

This case is an appeal of a hearing officer's decision dated May 23, 2005. In their January 4, 2006, motion to dismiss, the Defendants argued that, contrary to the requirements of Fed. R. Civ. P. 4(j)(2) and this Court's November 30, 2005, Notice, service of the complaint on the Mayor had not been timely made. In their Opposition, Plaintiffs essentially contend that Defendants had actual notice of the Complaint, and that Plaintiffs had made a diligent attempt to effect service on the District. Plaintiffs' contentions are without merit.

## ARGUMENT

### I. Plaintiffs have failed to show good cause for their admitted failure of timely service.

At the outset, what is *not* in dispute should be kept clearly in mind. First, the Plaintiffs do not disagree that, where an action is brought against the District, Fed. R. Civ. P. 4(j)(2) requires service on the Mayor, and that timely service on the Mayor was not accomplished. See Opp., p. 5 ("the Plaintiffs had to validly serve each of the named Defendants with a signed summons and copy of the complaint on or before October 20, 2005"), p. 4 (Plaintiffs served a "summons with a copy of the Complaint on the Mayor's office on January 6, 2005"). Whether under the Federal Rule, or under local Court rules governing service, service on the Mayor is a requirement for effective service on the District. Fed. R. Civ. P. 4(j)(2), *Pellegrin and Levine, Chartered v. Antoine*, 961 F.2d 277 (D.C. Cir. 1992).

Second, Plaintiffs do *not* dispute that their counsel, having waited until 6 days before the 120-day deadline for service under Fed.R.Civ.P. 4(m), was specifically alerted to the need for service on the Mayor when the Complaint was delivered to the District's Office of Attorney General ("OAG") on October 14, 2005. See, e.g., Opp., p. 3 (OAG employee "told counsel that the summons and Complaint had to be served on the Mayor's office as well"); Tyrka Statement, ¶ 12 (OAG employee "told me that the summons and Complaint had to be served on the Mayor's office as well").

The only issue remaining, therefore, is whether Plaintiffs have shown "good cause" for the failure to timely serve the Mayor, and hence the District. The Tyrka Statement states the following by way of excuse (at ¶¶ 14-17):

> Shortly after filing the returns of service in this case, at some point over the New Year weekend, before the Defendants filed their Motion to Dismiss, I discovered my mistake in serving the Office of the Attorney General instead of the Mayor's office.
>
> On Tuesday, January 3, 2005, I instructed a paralegal to obtain a new summons in this case to be served on the Mayor. She made that request to the Clerk that day.
>
> I instructed the paralegal to obtain the summons from the Clerk as soon as it was ready. As I recall, there was some delay in obtaining the summons, though I believe that the paralegal called the Clerk every day.
>
> At the first opportunity, I instructed the paralegal to serve the summons and a new copy of the Complaint on the Mayor. She did so on January 6, 2005.

Counsel's explanation is plainly disingenuous, and fails entirely to establish "good cause" for the untimely service.

First, the assertion that counsel "discovered" his "mistake" at "some point over the New Year weekend," if true, reflects a stunning disregard for the problem having earlier been flagged both by OAG and this Court. As acknowledged by counsel, OAG informed him of the requirement for service on the Mayor on October 14. And this Court, on November 30, specifically noted the potential for dismissal of the Complaint unless proof of service – presumably, proof of proper service – were filed by December 28. That counsel did not undertake to determine correct service requirements until after the Court's December 28th deadline seems anything but a conscientious effort to determine what the Federal Rules require.

But in fact, the claim of having first realized the need for serving the Mayor "at some point over the New Year Weekend" is directly inconsistent with other portions of counsel's Statement. At paragraphs 6-7 of the Tyrka Statement, it is related that "in early 2005," "I carefully examined the rules and came to the conclusion[ ] that . . . the Mayor's office needed to be served." If *that* statement is true, the most charitable conclusion that

3

can be reached is that the "mistake" that was "discovered" at "some point over the New Year weekend" was that counsel hadn't read the two returns of service filed with the Court on December 23 (on which the Plaintiffs" December 23 motion for default judgment was based), and believed one of them said "Mayor." That conclusion, however, seems hardly credible.

Plaintiffs' counsel points out that he has been filing IDEA suits such as this since 2003. See Tyrka Statement, ¶ 3. At that time, the process server counsel used "explained to me that the District of Columbia would challenge service unless the District of Columbia summons were served both at the Mayor's office and at the Office of Corporation Counsel, as it was then known." Id., ¶ 4. Apparently not having himself researched the matter until "early 2005," counsel concluded at that time that, among other things, "the Mayor's office needed to be served," and followed that course subsequently. Id., ¶¶ 7-8. Based on some unclear telephone exchange(s) thereafter, and notwithstanding the words of Rule 4(j)(2), counsel's view somehow transmogrified into "the erroneous belief that service of the District of Columbia summons upon the Office of the Attorney General would constitute service upon the District of Columbia according [to] the Federal Rules of Civil Procedure." Id., ¶¶ 9-10.

No "good cause" for the proper service of process has been shown here. After having relied on the opinion of a process server for two years, counsel states that he concluded in early 2005 – after research and before the filing of this action – that service on the Mayor was necessary under the Rules. He was specifically reminded of that requirement by OAG on October 14, 2005. And this Court's November 30 Notice was certainly reason in itself for counsel to ascertain what the Rules required. However, all of

4

these circumstances were ignored, the Court's December 28 deadline passed, and only then did counsel "discover" his "mistake." Such unfamiliarity with the basic Rules by experienced litigating counsel, and such a plain lack of diligence in complying with familiar procedures, is the antithesis of "good cause." Claiming now that "the Plaintiffs swiftly and effectively made proper service once their mistake was discovered" (Opp., pp. 9, 12) is simply pleading puffery.[1]

### II. There are no adequate ground for enlarging the Rule's 120 day service period.

The Plaintiffs ultimately argue that, even in the absence of a "good cause" showing, the Court here should enlarge the time for proper service in this case. Opp., pp. 10-12. The essential grounds are that the Defendants will not be prejudiced, while the Plaintiffs would be "severely prejudiced" since "the Plaintiffs' claims will be forever barred by the statute of limitations." Id, p. 11.

The Defendants are not insensitive to the need to assure a fair opportunity for parents and students to utilize the rights afforded them under IDEA – including the right to a timely review of administrative educational decisions with which they disagree. Neither do the Defendants believe that the sins of counsel should automatically and conclusively be visited on student/parent plaintiff. But at some point, dilatory efforts to

---

[1] While the Plaintiffs rely on *Arroyo v. Wheat*, 102 F.R.D. 516 (D. Nev. 1984); *Walden, et al. v. Tulsair Beechcraft, et al*, 96, F.R.D. 34 W.D. Ark. 1982; and *FDIC v. Sims*, 100 F.R.D. 792 (N.D. Ala. 1984), those cases do not legitimize the inattention here. The court in *Arroyo* pointed out that "Inadvertent or heedless non-service is what amended Rule 4(j) is aimed at." Id. at 519. "Heedless non-service" is exactly what plaintiffs did in this case long after they were on notice of the defective service. Also, this case can be distinguished from *Walden* on the facts. While *Walden* plaintiffs misunderstood the law, the plaintiffs' counsel here claims to have ascertained the need to serve the Mayor in early 2005, and was further reminded of the requirement in October. Counsel simply "forgot" his own earlier research and disregarded the advice volunteered in October. Likewise, the *Sims* plaintiff's effort to effect service was found to be *bona fide*; here, plaintiff failed to serve a governmental entity who is easily served with process.

5

utilize the opportunities afforded by the statute disrupt the orderly administration of special education services, and the procedures established to oversee the provision of those services. And at some point, counsel must be held responsible for knowing and following basic Court procedures, and should not be permitted to use claims of harm to his/her client as a shield for failings in that regard.

The Defendants believe the substance of this action – which challenges an administrative Hearing Officer's decision denying the Plaintiffs' demand that the student be kept in their preferred private school – is without merit.[2] But even ignoring that view, the Plaintiffs' conduct to date has reflected no urgent concern about the student's educational well-being. The administrative decision being challenged was issued on May 23, 2005. Opp., p. 2. The "appeal" to this Court was not filed until the last day permitted, June 22, 2005. Id. No effort at *any* kind of service was even *attempted* until the end of Rule 4(m)'s 120 period. No return of service of any kind was filed until the Court's threat to dismiss the case. And even then, there was no meaningful effort to assure that basic court procedures had been observed.

At no time since the May administrative decision was there any effort by the Plaintiffs to seek early action that might affect the student's placement for the 2005-2006 school year. Generalized claims now of "severe prejudice" – only when dismissal of the

---

[2] The hearing officer found that DCPS did not deny Plaintiff A.H. a free appropriate public education ("FAPE") in placing him at the Key School rather than at Key School. As reflected by the administrative record, his then most recent IEP of January 5, 2005, A.H. was classified as speech and language impaired secondary to his hearing impairment. His I.E.P. indicated that he required 20.5 hours of specialized instruction, 6 hours of speech and language therapy and 1 hour of audiology consultation. According to the I.E.P., A.H. should be out of regular education 98% of the time. In contrast, the River School is a "inclusion model" program where A.H. was educated in a class consisting of non-disabled peers. Recent testing indicated that A.H. has not received educational benefit from the program at the River School. Moreover, the River School has no special education teacher to provide the specialized instruction that A.H. needs. The Key School, however, has a teacher who is specifically trained in teaching the hearing impaired. Thus, the hearing officer properly ruled against the Plaintiffs.

6

case for clear procedural failings is threatened for a second time – appear at odds with the (at best) casual pursuit of this action to date. The Defendants submit that there has been no adequate showing here justifying an enlargement of the Rule's 120-day period – one which expired October 20. Counsel "is expected and presumed to know the Local Rules of the Court." *Coppedge v. District of Columbia*, 2005 WL 914775 (D.D.C)

### III. The failure of timely service is not obviated by service on DCPS' Superintendent, and this action may not be separately maintained against the Superintendent.

At pages 5-6 of the Opposition, the Plaintiffs assert that, "regardless of the Court's decision regarding the District of Columbia, the case should proceed against" Dr. Janey, DCPS' Superintendent. The reason? Because "[t]he Plaintiffs timely and validly served a summons and a copy of the Complaint" on him and, witness the headings (not the content) of three Supreme Court decisions, "IDEA cases are regularly filed and prosecuted against superintendents, school boards, and school districts." Opp., p. 6.

The Plaintiffs' contention is patently meritless. Dr. Janey is sued in his official capacity as Superintendent of DCPS. DCPS is *non sui juris*. It is well established that agencies and departments within the District of Columbia government are not suable as separate entities. Fields v. District of Columbia Department of Corrections, 789 F. Supp. 20, 22 (DDC 1992); Hinton v. District of Columbia Metropolitan Police Dep't, 726 F. Supp. 875 (DDC 1989); Roberson v. District of Columbia Bd. of Higher Educ., 359 A.2d 28, 31, n. 4 (D.C. 1976); Braxton v. Nat'l Capital Housing Auth., 396 A.2d 215, 216 (D.C. 1978). To the extent the DCPS is indeed "a subordinate agency within the executive branch of the District government," D.C. Code Ann. §40-1704, this action cannot properly be maintained against that agency.

7

To be sure, it can be said that, as an official of DCPS – and by extension, of the District of Columbia – a suit against Dr. Janey can be considered a suit against the District. However, that academic fact does not alter the Rule 4(j)(2) service requirement *on the Mayor*. Nor does it obviate the consequences of a failure to meet that Rule's requirement – a dismissal of the case against the District with prejudice.

Indeed, the logical consequence of the Plaintiffs' assertion would be both unlawful and absurd. For the Plaintiffs appear to contend that, even though the case may be dismissed as to the District, it could nonetheless be maintained against an official – sued in his official capacity – of a *non sui juris* agency of the District, simply because that agency is a part of the District government. Such contorted reasoning has no legal or logical support whatever, and the Plaintiffs have provided none.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

9

|  |  |
|---|---|
|  | **/s/ Carol E. Burroughs** |
|  | CAROL E. BURROUGHS[#415432] |
|  | Assistant Attorney General |
|  | 441 Fourth Street, N.W., |
|  | Sixth Floor South |
|  | Washington, D.C. 20001 |
|  | (202) 724-6520 |
|  | (202) 727-3625 (fax) |
| January 25, 2006 | carol.burroughs@dc.gov |

.